UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-22287-CIV-SEITZ/MCALILEY

TODD NARSON, individually and on behalf of
all others similarly situated,

    Plaintiff,

v.

GODADDY.COM, INC. & THE GODADDY
GROUP, INC., a foreign corporation,

    Defendants.
_____/

CV '08 0177 PHX SRB

## ORDER TRANSFERRING CASE TO THE DISTRICT COURT FOR THE DISTRICT OF ARIZONA AND CLOSING CASE

THIS CAUSE is before the Court on Defendants' Motion to Dismiss for Improper Venue [DE 18].[1] Defendants move to dismiss the Complaint for improper venue under Fed. R. Civ. 12(b)(3) arguing that Plaintiff agreed to Defendants' Universal Terms of Service agreement and Domain Registration Agreement which provide for venue in Maricopa County, Arizona. Plaintiff argues that the forum selection clause is not applicable to the instant dispute. Having reviewed the motion, the response and reply thereto, the entire factual record and the relevant legal authorities, the Court finds that venue is not proper in this forum and transfers this matter to the District Court for the District of Arizona.[2]

---

[1] Defendants have also filed a motion to dismiss for failure to state a claim, however, because the Court finds that venue is not proper and transfers the case to the District Court for the District of Arizona, it shall leave the resolution of that motion for the transferee court. *See Crenshaw v. Antokol*, 287 F. Supp. 2d 37 (D.D.C. 2003) (stating that "[b]ecause venue is not proper in the District of Columbia, the court must leave the resolution of the pending motions to the sound discretion of its sister court in the Northern District of Indiana."); *see also Wiggins v. Carnival Corporation*, 2005 WL 2086043, at * 4 (W.D. Tex. Aug. 25, 2005) (holding that because transfer was appropriate under a forum selection clause, it would not resolve the pending motion to dismiss for failure to state a claim.)

[2] While Defendants moved to dismiss the case for improper venue, a court may in its discretion elect to transfer the case to the proper venue. *See Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp. 2d 263, 266 (N.D.N.Y 2003) (holding that even if a defendant prevails on a motion to dismiss for improper venue, a court retains discretion to decline to dismiss the case in favor of a transfer to any district where the case could initially have been brought) (citing cases).

I.  **Background**

This action arises out of an internet transaction between Plaintiff Todd Narson and Defendants GoDaddy.com, Inc. and GoDaddy Group, Inc. (collectively, "GoDaddy") and purports to assert a class action complaint for violation of the Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. 1681c(g), which limits what credit or debit card information may be printed on the receipt provided to the cardholder at the point of sale. GoDaddy, through their website, "GoDaddy.com," acts as a domain name registrar providing domain registration and website hosting services.[3] (*See* Complaint ¶ 5.) Plaintiff used his credit card to register several Internet domain names with GoDaddy and alleges that GoDaddy violated FACTA by printing "more than five digits of the debit or credit card's account number and/or the card's expiration date" on the receipt provided to him. (*Id.* ¶ 7.)

The initial issue before the Court is whether venue is proper in the Southern District of Florida. In support of its challenge to venue in this Court, GoDaddy has filed the declaration of Ben Butler which describes the purchase procedure. The Butler declaration is uncontroverted and provides as follows.[4] Prior to making a purchase at the GoDaddy.com website, a customer must first click two boxes on the website to indicate that the customer has read both GoDaddy's Universal Terms of Service agreement and its Domain Name Registration Agreement (the "Agreements"). (Butler Decl. ¶ 5.) A customer can read both of the Agreements by clicking on the web link provided next to each box. Each customer is required to represent that he or she has read these Agreements prior to entering his or her credit card account number and expiration date into the website and the

---

[3]  A "domain name" is another term for an internet address, and a "domain name registrar" is an entity that sponsors domain name applications. *DeJohn v. The .TV Corp. Intern.*, 245 F. Supp. 2d 913, 914 (N.D. Ill. 2003).

[4]  The October 31, 2007 declaration of Ben Butler shall hereinafter be referred to as the "Butler Decl."

transaction cannot be completed until the customer has done so. The procedure described above was in effect at the time Plaintiff executed his transaction with GoDaddy.

Section 14 of the Universal Terms of Service agreement, entitled "Governing Law, Venue; Waiver of Trial by Jury," states in relevant part that:

> This agreement shall be deemed entered into in the State of Arizona. Except for disputes concerning the user of a domain name registered with Go Daddy, You agree that the laws and judicial decisions of Maricopa County, Arizona, shall be used to determine the validity, construction, interpretation and legal effect of this Agreement. *You agree that any action relating to or arising out of this Agreement shall be brought in the courts of Maricopa County, Arizona.* For the adjudication of disputes concerning the use of any domain name registered with Go Daddy, You agree to submit to jurisdiction and venue in the U.S. District Court for the District of Arizona located in Phoenix, Arizona.

(Butler Decl., Ex. A (emphasis added).) Additionally, the Domain Name Registration Agreement includes a substantially identical provision in Section 13. (Butler Decl., Ex. B.)

## II. Standard of Review

On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper. *See, e.g., Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citing cases). The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper. *Id.* (citing *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (citing cases). The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*

## III. Discussion

Generally, in analyzing the enforceability of a forum selection clause, a court must address three questions: (1) whether the clause is mandatory or permissive; (2) whether a party can avoid the clause; and (3) whether the clause encompasses the claims charged. *See, e.g., DeJohn*, 245 F. Supp.

2d at 921-22. The party resisting the forum selection clause has the burden of showing that it is invalid. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

### (a)  The Forum Selection Clause At Issue Is Mandatory

First, for a forum selection clause to be effective, the language delineating the choice of forum must be "mandatory rather than permissive." *Florida Polk County v. Prison Health Services, Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999). Mandatory forum selection clauses are presumptively valid and must be enforced unless they are unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). A permissive clause authorizes jurisdiction in a designated forum, but does not prohibit litigation elsewhere. *Global Satellite Communication Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004). A mandatory clause, in contrast, "dictates an exclusive forum for litigation under the contract." *Id.* (citing *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999). Language in a forum selection clause that states that a dispute "shall" be brought in a certain venue evidences a mandatory clause. *Id.* at 1272 (holding that the imperative "shall" is most reasonably interpreted to mandate venue). Here, the language of the forum selection clause is mandatory as evidenced by the words "*shall be brought*" indicating that a party is required to bring his dispute in the named forum.

### (b)  Plaintiff May Not Avoid The Mandatory Forum Selection Clause

A party seeking to avoid a mandatory forum selection clause must show that: (1) it is the result of fraud or overreaching; (2) the party will be deprived of his day in court as the result of the "grave inconvenience or unfairness of the selected forum;" (3) the party may be deprived of a remedy due to the "fundamental unfairness" of the chosen law; or (4) the clause contravenes a strong public policy of the forum state. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993). Plaintiff makes two argument in this regard: (1) the clauses are unfair because Plaintiff did not

knowingly consent to them; and (2) transfer of the case is fundamentally unfair because the forum selection clauses were induced by overreaching.

First, Plaintiff argues that the forum selection clauses are not enforceable because Plaintiff did consent to the "vague and ambiguous language" of the Agreements. Plaintiff only cites one case in support of this argument, *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002). In *Specht*, the court looked at what has been defined as a "browse-wrap" agreement, an agreement whereby the user can download software prior to manifesting assent to any licensing terms, and before being given an opportunity to view any terms or actually receiving notice of the terms. *Id.* at 21. The plaintiffs there sought to download free software and there was no reference to license terms made on screen before they clicked on the download button. Instead, the sole reference to the license terms was located in text visible only if they scrolled down to the screen below the download button's location. The court determined that there could be no mutual assent where the notice of the existence of license terms governing the use of the software was visible to internet users only if they scrolled down the screen after already being able to download the software. *Id.* at 32.

The Second Circuit analyzed this issue further in *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ("*Register.com*"), in which the appellate court distinguished *Specht* and evaluated further the necessary standards online contracts must meet to be enforceable. In *Register.com*, the defendant, on a daily basis, used information off Register's website in violation of its terms of use. The defendant claimed it was not bound by Register's restrictions due to lack of legally enforceable notice because the information did not appear until after submission of the query and receipt of the information. The Second Circuit upheld the agreement because the defendant saw the terms every single time it requested information, and therefore, it could not simply disregard those terms and exploit the information received. *Id.* at 403.

The present case is more similar to the *Register.com* decision because, although the GoDaddy.com website does not require the consumer to actually open and view the Agreements, a customer must click two boxes on the website to indicate that the customer has read them. Moreover, each customer is required to represent that he or she has read these Agreements prior to entering his or her credit card account number and expiration date into the website and the transaction cannot be completed until the customer has done so. A consumer continuing the transaction is thus consciously aware of the terms and conditions of purchasing the domain names, including the designation of a forum. Thus, Plaintiff cannot argue that he did not assent to the terms of the Agreements thereby distinguishing this case from *Specht*.

Second, Plaintiff argues that requiring him to prosecute this action in the forum dictated by the forum selection clause is fundamentally unfair because of overreaching. Essentially, Plaintiff argues that because the online transaction at issue involved a relatively small monetary amount, requiring him to incur the expense of filing suit in a designated out of state forum is unfair. Plaintiff, however, has submitted no legal support for this proposition. Furthermore, numerous courts have found that forum selection clauses contained within so-called "clickwrap" agreements, such as the Agreements in this case, are valid. *See, e.g., Koresko v. RealNetworks, Inc.*, 291 F. Supp.2d 1157, 1162-63 (E.D. Cal. 2003); *see also DeJohn*, 245 F. Supp. 2d at 921 (holding that a forum selection clause in electronic agreement with domain name registrar was enforceable). Thus, Plaintiff's argument is not persuasive.

    (c)    **The Forum Selection Clause Encompasses Plaintiff's FACTA Claims**

Finally, before a court can consider enforcing a forum selection clause, it must first decide whether the clause applies to the type of claims asserted in the lawsuit. *See Stewart Org., Inc. v.*

-6-

*Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) ("*Ricoh*"); *see also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997) (determining the scope of a forum selection clause). In making that decision, a court "must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). In *Ricoh*, the Eleventh Circuit determined that the language "any case or controversy arising under or in connection with [an agreement]" was broad and sufficient to encompass claims for fraud and antitrust violations. *Id.* Here, the forum selection clauses use not only the phrase "arising out of," but also the phrase "relating to," which courts have described as synonymous with "in connection with" and "associated with." *See Smith v. Lucent Technologies, Inc.*, 2004 WL 515769, at * 8 (E.D. La. Mar. 16, 2004) (citing cases). Thus, the parties incorporated forum selection clauses into the Agreements that encompass a *broad array of potential* claims.

Plaintiff argues that notwithstanding the broad language of the forum selection clauses, they cannot encompass claims under FACTA. Plaintiff, however, provides no legal authority for this proposition. Moreover, recently the Northern District of California held that a mandatory forum selection clause included in a software license support and services agreement did encompass FACTA claims. *Hile v. Buth-Na-Bodhaige, Inc.*, 2007 WL 4410774, at *2-3 (N.D. Cal. 2007). Thus, similar to the holding in *Hile*, the broad language of the forum selection clauses encompasses Plaintiff's FACTA claims as they are "relat[ed] to" the Agreements which are required to be read prior to execution of the transaction. Thus, venue is appropriate only in the forum chosen by the parties.

IV.   **Conclusion**

For the reasons set forth herein, it is hereby

ORDERED that

(1)   This Clerk of Court is directed to TRANSFER this action to the District Court for the District of Arizona for all further proceedings.

(2)   Defendants' Motion to Dismiss for Improper Venue [DE 18] is DENIED AS MOOT.

(3)   This case is CLOSED.

DONE AND ORDERED at Miami, Florida, this 22nd day of January, 2008.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record

Certified to be a true and correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 1-23-2008

-8-